# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **INFINITE ALLAH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00002 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **COMMONWEALTH OF VIRGINIA, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Infinite Allah, Pro Se Plaintiff.*

Infinite Allah, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison employees have wrongfully confiscated legal files and religious materials related to his prior civil action. Upon review of Allah's complaint, I conclude that the action must be summarily dismissed with prejudice for failure to state a claim.

I.

Allah is an inmate at Augusta Correctional Center ("Augusta"). He is an adherent of the Nation of Gods and Earths ("NGE"), a belief system that Allah claims as a religion. The Virginia Department of Corrections ("VDOC"), however, has classified NGE inmates as a Security Threat Group ("STG"). VDOC policies restrict NGE inmates from meeting communally, prohibit them from

wearing NGE-related clothing, and prohibit inmates from receiving or possessing copies of NGE publications and writings. Allah, through counsel, brought a § 1983 action in this court in 2012, seeking VDOC recognition of NGE as a religion, accommodation of his NGE religious practices, and permission to possess NGE publications and writings; after a bench trial, based on the record before me, I rejected Allah's claims. *See Allah v. Virginia*, No. 2:12CV00033, 2014 WL 1669331 (W.D. Va. 2014), *affirmed*, 601 F. App'x 201 (4th Cir.)(unpublished), *cert. denied*, 136 S. Ct. 255 (2015).

According to Allah's current Complaint, while his Petition for a Writ of Certiorari was pending, Allah ran short of funds to continue to retain the attorney who had represented him in the earlier stages of the case. The attorney mailed the entire case file to Allah on December 30, 2014. Prison officials at Augusta opened the mailing outside Allah's presence and seized items without giving notice to Allah until May 12, 2015. Prison officials also allegedly seized Allah's incoming mail from this court on November 18, 2013, related to pending litigation. They allowed Allah to sign a legal mail log regarding receipt of this mail, but did not allow him to physically possess this material.

According to Allah, the two medium-sized boxes of case-related materials that officials seized contained copies of court filings the attorney had prepared, "strategic assessment(s) of research into the legal and anthropological particulars

(expert witness' deposition and writings on the subject at hand) [and] plaintiff's constitutional and spiritual standing in his civil action. . . ." (Compl. 4, ECF No. 1.) Allah's partial list of these materials includes numerous NGE publications and Allah's letters and written arguments to the court about his NGE beliefs. (*Id.* at 13-14.) Allah alleges that the seized materials have both monetary and sentimental value to him and claims several items as his own intellectual property for which he has been unable to seek copyright protection. (*Id.* at 14.)

The defendants in this new § 1983 action are Lt. Peters, Sgt. Wilhelm (the Institutional Gang Investigator at Augusta), the prison itself, and the Commonwealth. Liberally construed, Allah's Complaint alleges the following claims against these defendants: (1) By confiscating Allah's legal materials, the defendants violated his constitutional rights (a) to substantive and procedural due process; (b) to engage in confidential communications with counsel; and (c) to access the court; (2) The defendants confiscated Allah's materials in retaliation for his prior lawsuit; and (3) Allah is entitled to recover physical possession of, or reimbursement for, his personal property through this action in detinue under Virginia law. As relief on Claims 1 and 2, Allah seeks compensatory and punitive damages.

-3-

II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). A court should not summarily dismiss an action for failure to state a claim, however,

> "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."

*De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). Thus, before serving Allah's case on any of the defendants, I must determine if his allegations state any claim for relief.

Allah brings his federal claims under 28 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). For reasons stated herein, I conclude that Allah has no actionable § 1983 claim related to his confiscated materials and that all his federal claims must be summarily dismissed under § 1915A(b)(1) with prejudice accordingly. As such, I decline to exercise supplemental jurisdiction over Allah's

-4-

state law action in detinue and will dismiss this claim without prejudice. *See* 28 U.S.C. § 1367(c)(3).

It is well established that "inmates retain at least some constitutional rights despite incarceration," but that those rights must be balanced against state interests in maintaining prison safety and security. *Washington v. Harper*, 494 U.S. 210, 223 (1990) (citing *Turner v. Safley*, 482 U.S. 78, 84-5 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89).

To determine whether the prison officials' confiscation of Allah's lawsuit materials withstands scrutiny under this reasonableness standard, I must consider these three *Turner* factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, a court must consider the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Third, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. . . .[1]

---

[1] The *Turner* decision also discussed another factor: "whether there are alternative means of exercising the right that remain open to prison inmates." 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id.* (internal quotation marks,

-5-

Case 7:16-cv-00002-JPJ-RSB   Document 18   Filed 07/15/16   Page 5 of 12   Pageid#: 115

*Washington*, 494 U.S. at 224-25 (internal quotation marks and citations omitted). Under these factors and the court's decisions in Allah's prior case, I find it evident that the defendants' decision to confiscate Allah's legal materials in November 2013 and December 2014 was reasonably related to legitimate prison interests in safety and security.

First, in April 2014, I determined that prison officials had compelling security reasons to prohibit inmates from possessing NGE materials in their cells and could lawfully do so. My factual findings included the following:

> ". . . NGE . . . has acted as a prison gang that would pose a threat to the safety and security of VDOC prison facilities if treated as other religious groups. Inmates affiliated with NGE have a demonstrated history of violence and racism.
>
> . . . .
>
> NGE materials are often handwritten, and can vary from copy to copy. Whether handwritten or typed, most contain racist and/or violent sentiments. Additionally, most contain codes that have the potential to aid inmates in passing messages that circumvent safety and security in the prison.

*Allah*, 2014 WL 1669331, at *2. After extensive discussion of Allah's claims and the evidence presented at the bench trial, I made the following conclusions of law regarding possession of NGE materials:

---

alterations, and citations omitted). Under the other *Turner* factors, however, I conclude that Allah's constitutionally protected interests in his lawsuit materials are outweighed by legitimate prison interests in security, whether or not Allah retains some other means to exercise the rights he asserts.

> Due to the inability of VDOC to review all handwritten NGE materials, and the frequency with which typed and handwritten NGE materials contain codes, racist sentiments, and/or violent sentiments, the decision of VDOC to ban such NGE materials is the least restrictive means of furthering a compelling state interest in prison safety.

*Id.* at *11. I denied relief under § 1983 and granted judgment for the defendants, and the Fourth Circuit affirmed my decision. *Allah*, 601 F. App'x at 205 ("[W]e discern no reversible error. We are therefore content to affirm the judgment on the cogent reasoning spelled out in the well-crafted Opinion of the district court.").

Second, under the constitutional standard in *Turner*, the VDOC's policies applied to Allah's NGE materials are lawful, based on the factual findings and legal rulings in Allah's previous case. Allah brought the claims in his prior lawsuit under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"), rather than under the First Amendment. To defeat a RLUIPA challenge to a particular prison policy, the VDOC must "prove its policy furthers a compelling governmental interest by the least restrictive means." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). Thus, RLUIPA requires higher degree of proof from prison officials on the effects of accommodating an inmate's religious practices than does the First Amendment standard itself. *See, e.g., Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006) (". . . RLUIPA adopts a more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.")

(internal quotation marks and citation omitted). As a result, when a prison policy withstands scrutiny under the RLUIPA standard, as does the VDOC's prohibition on possession of NGE materials, that policy also survives a constitutional challenge without further discussion. *See, e.g., Utt v. Brown*, No. 5:12-CT-3132-FL, 2015 WL 5714885, at *9 (E.D.N.C. Sept. 29, 2015) (finding that policy held to withstand RLUIPA's strict scrutiny was also "reasonably related to legitimate penological interests" so as to withstand constitutional challenge).

Based on the foregoing, Allah has no actionable claim that confiscation of his legal materials violated his First Amendment right to receive information. My prior ruling upholding under RLUIPA the VDOC's policies prohibiting possession of NGE materials establishes that those policies are also lawful under the Constitution. Thus, I conclude that the decisions rendered in Allah's prior lawsuit foreclose his First Amendment and substantive due process claims in this civil action. Indeed, to hold otherwise would be to allow Allah to make an end run around my prior ruling, as affirmed by the court of appeals, that prison officials may lawfully prohibit him from possessing NGE materials and writings.

Allah's procedural due process claim here fails for a different reason: he has no federally protected property interest in possessing his NGE materials in a VDOC prison. An inmate's claim under § 1983 that state officials deprived him of his property without due process involves two questions: whether the inmate had a

protected right to the property with which the state interfered; and whether the procedures attendant to that deprivation were constitutionally adequate to prevent wrongful deprivations. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "Property interests . . . are not created by the [federal] Constitution. Rather they are created and their dimensions are defined by existing rules . . . such as state law[s] . . . that support claims of entitlement" to the property. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Prison administrators have broad discretion in the management of correctional institutions." *Bannan v. Angelone*, 962 F. Supp. 71, 73 (W.D. Va. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Thus, when other rights like free exercise, free speech, and substantive due process are not infringed, as in Allah's circumstances here, prison officials may "constitutionally disallow the possession of personal property" items without implicating inmates' federal due process rights. *Id.* at 74.

Allah cannot point to any entitlement or protected interest he has under VDOC regulations to possess his NGE materials in prison. On the contrary, as discussed, VDOC policies prohibit inmates' possession of NGE materials. Therefore, Allah has no state-created, protected interest in possession of the confiscated materials and, consequently, had no federal right to procedural protections prior to their confiscation. Moreover, as officials did provide him

notice and an opportunity to challenge the confiscation, he has received the key elements of procedural protection in any event.

Allah also fails to state cognizable § 1983 claims of interference with his access to counsel and to the court in the circumstances he describes. Each of these rights may be lawfully restricted by prison policies that are reasonably related to legitimate penological interests, as is the VDOC restriction against possession of NGE materials.[2] *See Washington*, 494 U.S. at 223.

Finally, I will also summarily dismiss Allah's § 1983 retaliation claim for failure to state a claim. Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). On the other hand, to state a § 1983 claim here,

---

[2] Moreover, I am satisfied Allah can prove no set of facts showing that confiscation of his NGE case file materials hampered his ability to communicate confidentially with counsel or to litigate any viable legal claim pro se, concerning his possession of these materials while in prison. Furthermore, I cannot find any viable access to courts claim arising from Allah's alleged inability to seek copyright protection for his confiscated NGE manuscripts. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 355 (1996). As the Supreme Court stated in the *Casey* decision, the right to access the court

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* (emphasis in original).

Allah must present more than conclusory allegations of retaliation. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Specifically, he must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the allegedly retaliatory action. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Allah can make no such showing. In this case, it is clear from his own allegations that prison officials confiscated the materials at issue because they were NGE materials that could be lawfully withheld from Allah under the courts' rulings against him in his prior lawsuit. In short, prison officials clearly confiscated Allah's NGE materials not because he pursued the prior lawsuit, but because that prior lawsuit was decided against him. Such actions do not provide grounds for a § 1983 retaliation claim.

## III.

For the reasons stated, I will summarily dismiss Allah's § 1983 claims in this lawsuit with prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim. I am satisfied that even "drawing all reasonable factual inferences from [the factual allegations in the Complaint] in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief" regarding the confiscation of his NGE materials. *De'Lonta*, 330 F.3d at 633. In light of this ruling, I also decline to exercise supplemental jurisdiction over

Allah's state law claim in detinue, *see* 28 U.S.C. § 1367(c)(3) and will dismiss this claim without prejudice.

A separate Order will be entered herewith.

DATED: July 15, 2016

/s/  James P. Jones
United States District Judge