# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **INFINITE ALLAH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00002 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **COMMONWEALTH OF VIRGINIA, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Infinite Allah, Pro Se Plaintiff.*

Infinite Allah, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison employees wrongfully searched and confiscated legal files and religious materials related to his prior civil action.[1] Upon review of Allah's Complaint, I conclude that the action must be summarily dismissed with prejudice for failure to state a claim.

---

[1] This Opinion is issued in response to the remand by the court of appeals on the ground that my previous dismissal of the Complaint, *Allah v. Virginia*, No. 7:16CV00002, 2016 WL 3911989 (W.D. Va. July 15, 2016), was not a final disposition of the case because I did not address allegations that the defendants had searched Allah's incoming "legal mail outside of his presence." *Allah v. Virginia*, No. 16-7021, 2017 WL 1200972, at *1 (4th Cir. Mar. 31, 2017) (unpublished). Accordingly, I have included in this Opinion my prior determinations, as well as a resolution of the remaining allegations as specified by the court of appeals.

I.

Allah is an inmate at Augusta Correctional Center ("Augusta"). He is an adherent of the Nation of Gods and Earths ("NGE"), a belief system that Allah claims as a religion. The Virginia Department of Corrections ("VDOC"), however, has classified NGE inmates as a prison gang, officially referred to as a Security Threat Group. VDOC policies restrict NGE inmates from meeting communally, prohibit them from wearing NGE-related clothing, and prohibit inmates from receiving or possessing copies of NGE publications and writings. Allah, through counsel, brought a § 1983 action in this court in 2012, seeking VDOC recognition of NGE as a religion, accommodation of his NGE religious practices, and permission to possess NGE publications and writings. After a bench trial, I rejected Allah's claims. *Allah v. Virginia*, No. 2:12CV00033, 2014 WL 1669331 (W.D. Va. Apr. 28, 2014), *aff'd*, 601 F. App'x 201 (4th Cir.) (unpublished), *cert. denied*, 136 S. Ct. 255 (2015).

According to Allah's current Complaint, on November 18, 2013, a letter arrived at Augusta from the court to Allah, returning to him some pro se materials that he had mailed to this court for consideration in the prior Case No. 2:12CV00033. The letter informed Allah that pleadings in the case should be filed with the court only "by his then attorney of record." Compl. ¶ 47, ECF No. 1. Allah states that he "was given [an opportunity] to sign the Legal mail Logbook as

receiving said legal mail, but he never received physical possession of it, upon the defendants reading and confiscation thereof in his presence." *Id.* at ¶ 20. When Allah filed a grievance about the incident, the response was that "[a]ccording to Sgt. Wilhelm, Investigator[,] the mailing did contain gang material which was confiscated." V.S. 7, Ex. 1, ECF No. 6. Allah describes the items confiscated on November 18, 2013, as a "handwritten dissertation, thesis, and . . . other created works by [Allah]."[2] Compl. ¶ 54, ECF No. 1. Allah estimates the monetary value of these items at $40,525.74, and complains that the confiscation prevented him from seeking copyright protection. *Id.* at ¶¶ 52, 56(a).

Allah also alleges that while the direct appeal in his prior case was pending, he ran short of funds to continue to retain the attorney who had represented him up to that point in the case. The attorney shipped the entire case file to Allah, and it arrived at Augusta on December 30, 2014, in two medium-sized boxes "clearly marked" as "legal package[s]." *Id.* at ¶ 49. "The defendants never provided

---

[2] Allah's grievance appeal about the confiscation of the November 2013 mailing described the contents of the mailing in more detail. It contained a letter to me as presiding judge, Allah's pro se closing argument about the evidence presented at the evidentiary hearing in October 2013, a list of NGE groups, documents drafted by Allah and others that described NGE beliefs, an Asiatic calendar, and other legal materials. V.S. 9, Ex. 1, ECF No. 6.

[Allah] with notice of its receipt until May 23, 2015, after it was opened outside of his presence and seized."[3]  *Id.* at ¶ 17.

According to Allah, the two boxes of case-related materials that officials searched and seized contained copies of court filings the attorney had prepared, as well as "strategic assessment(s) of research into the legal and anthropological particulars (expert witness' deposition and writings on the subject at hand) [of] plaintiff's constitutional and spiritual standing in his civil action."  *Id.* at ¶ 18.  Allah provides a list of the "confiscated legal personal intellectual properties," including numerous NGE publications and Allah's letters and written arguments to the court about his NGE beliefs.  *Id.* at ¶ 50.  Allah alleges that the seized materials have both monetary and sentimental value to him.

The defendants in this new civil action are Lieutenant Peters, Sergeant Wilhelm, the prison itself, and the Commonwealth.  Allah's Complaint alleges violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights related to the search of legal mail outside of his presence, as well as to the seizure of certain documents sent from the court and Allah's former attorney.  Liberally

---

[3]  Allah alleges that as a result of the delayed notice that his legal packages had been received and confiscated in December 2014, he did not believe the assurances from his prior attorney that the packages had been shipped.  Allah says that "this lack of information caused a divisive relationship between him and [his prior] attorney, which was only reconciled upon the attorney mailing him the certified FedEx® receipts of the mailing that was signed as received at [Augusta] on Dec[ember] 30, 2014."  Compl. ¶ 49, ECF No. 1.

construed, his allegations suggest the following possible claims: (1) By searching and confiscating Allah's legal materials, the defendants violated his constitutional rights (a) to substantive and procedural due process; (b) to engage in confidential communications with counsel; and (c) to access the court; (2) The defendants confiscated Allah's materials in retaliation for his prior lawsuit; and (3) Allah is entitled to recover physical possession of, or reimbursement for, his personal property through this action in detinue under Virginia law. As relief on Claims One and Two, Allah seeks compensatory and punitive damages.

II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). A court should not summarily dismiss an action for failure to state a claim, however,

> unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

*De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003).[4] Thus, before serving Allah's case on any of the defendants, I must determine if his allegations state any claim for relief.

Allah brings his federal claims under 28 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). For the reasons stated, I conclude that Allah has no actionable constitutional claim arising from his allegations and that all his federal claims must be summarily dismissed with prejudice under § 1915A(b)(1). Further, I decline to exercise supplemental jurisdiction over Allah's state law action in detinue and will dismiss this claim without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### A. Federal Rights Not Implicated.

Allah has no legal basis for § 1983 claims against the Commonwealth or the prison itself, because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This rule also applies to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id.* at 70. Because Augusta is properly considered an arm of the Commonwealth of Virginia,

---

[4] I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

it cannot be sued under § 1983. Therefore, I will summarily dismiss as frivolous Allah's constitutional claims against the Commonwealth and Augusta. Peters and Wilhelm, for actions taken in their individual capacities, are subject to suit under § 1983. For different reasons, however, Allah also states no actionable claim against them.

As another preliminary matter, Allah had no Fourth Amendment protection against having his incoming legal mail opened and searched or read by prison officials. Simply stated, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

The Supreme Court has further held that an inmate has no protected right under the Sixth Amendment to communicate confidentially or otherwise with his attorney in a civil case. *Wolff v. McDonnell,* 418 U.S. 539, 576 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting."). Instead, the Sixth Amendment provides a *criminal* defendant a right to the effective assistance of counsel, including "the ability to speak candidly and confidentially with counsel free from unreasonable government interference." *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000). "[A]n individual enjoys no protection provided by the Sixth Amendment until the instigation of criminal proceedings against him." *Id.* Because the incoming

mailings at issue in this lawsuit bore no relationship to a criminal prosecution Allah was defending through counsel, the Sixth Amendment did not protect him against prison officials' searching, reading, or confiscating communications from counsel or from the court.

### B. Opening and Inspecting of Legal Mail.

In *Wolff v. McDonnell,* the Supreme Court found limited protection under the First and Fourteenth Amendments for inmates' incoming legal mail. 418 U.S. at 575. The Court noted:

> While First Amendment rights of correspondents with prisoners may protect against the censoring of inmate mail, when not necessary to protect legitimate governmental interests, this Court has not yet recognized First Amendment rights of prisoners in this context. Furthermore, freedom from censorship is not equivalent to freedom from inspection or perusal. . . . Finally, the Fourteenth Amendment due process claim based on access to the courts, has not been extended by this Court to apply further than protecting the ability of an inmate to prepare a petition or complaint. Moreover, even if one were to accept the argument that inspection of incoming mail from an attorney placed an obstacle to access to the court, it is far from clear that this burden is a substantial one. We need not decide, however, which, if any, of the asserted rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found acceptable by the State.

*Id.* at 575-76. The Court then proceeded to find constitutionally acceptable a state procedure that required incoming legal mail to be opened and inspected, but not read, in the presence of the inmate, so long as the mail was specially marked as privileged and as originating from an attorney who had previously identified

himself and his attorney-client relationship with a particular inmate to prison officials. *Id.* at 576-77. More precisely, the Court found that the mail policy challenged in *Wolff* was "all, and perhaps even more, than the Constitution requires." *Id.* at 577.

Allah is not challenging the constitutionality of the VDOC's general policy for handling inmates' incoming legal mail. Indeed, the current version of the VDOC policy available online appears very similar to the policy approved in *Wolff*. See VDOC Operating Procedure ("OP") 803.1(IV)(C)(1)(d)(ii).[5] This policy states: "All incoming legal correspondence shall be opened and searched for contraband only in the presence of the offender to whom it is addressed." *Id*. The definition of contraband includes "[a]ny correspondence, documents, drawings, jewelry, symbols, or property of any type that contains or indicates gang identifiers, language, or information." OP 803.1(III). Correspondence "received from verified attorneys" and federal court falls within the VDOC policy definition of legal mail. *Id.* As the policy itself is not under challenge, I will address only the constitutionality of Augusta officials' opening and inspecting of Allah's mailings.

Allah admits that when Augusta officials received the court's letter to Allah in November 2013, they followed the VDOC policy by notifying Allah and opening and searching the mailing for contraband in his presence. Because the

---

[5] Va. Dep't of Corr., *Operating Procedure 803.1*, *Offender Correspondence* (eff. Jan. 1, 2015)*,* http://www.vadoc.virginia.gov/about/procedures/documents/800/803-1.pdf.

VDOC then classified NGE as a gang, the NGE writings in that mailing qualified as contraband under VDOC policy. To identify them as contraband, officials had to read them in sufficient detail to recognize NGE identifiers. Under *Wolff*, this "perusal" of the mailing for contraband neither violated neither Allah's First Amendment right against censorship nor any constitutionally protected right to confidential communications with counsel or access to the courts, since the mailing was *from* the court. 418 U.S. at 576; *Altizer v. Deeds*, 191 F.3d 540, 548 (4th Cir. 1999) (finding practice of opening and reading all inmates' outgoing legal mail to search for contraband did not violate their constitutional rights). Moreover, Allah received notice of the mailing, was present to observe its inspection and confiscation as gang material, and had an opportunity to file grievances and appeals about these events. *See Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (stating that the Due Process Clause "require[s] that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case"). Thus, I find no procedural due process claim here. For the stated reasons, I will summarily dismiss as frivolous Allah's § 1983 challenges to prison officials' opening and inspection of the November 18, 2013 mailing.

Taking Allah's allegations as true, Augusta officials opened and inspected the December 2014 packages from his attorney without timely notice to Allah and

outside his presence. While such actions may have violated VDOC policies governing legal mail and packages, a violation of a state prison policy, without more, is not a ground for a federal civil rights action. *See Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

Moreover, Allah does not allege that the officers' inspection of the documents in the December 2014 packages had any particular adverse impact on his ability to continue litigating his prior lawsuit pro se and the record reflects that he pursued the case through certiorari proceedings in the Supreme Court. Officials' opening of an inmate's legal mail outside his presence on one occasion, with no evidence of a pattern or practice of doing so and no evidence of adverse effects on the inmate's litigation, does not rise to the level of a First or Fourteenth Amendment violation. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (holding that inmate claim of denial of access to court requires showing of actual injury to legal claim); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) (holding that "the interception of a criminal defendant's confidential

communications with his lawyer is subject to harmless-error analysis; and this must be true, and is, in prisoners' civil litigation as well").[6]

Allah's efforts to have these lawfully prohibited items mailed to him under the guise of legal materials from his attorney suggest an intent to regain possession of the items despite the prison's contraband policy. As I will discuss further, officials' actions to prevent him from doing so were reasonably related to legitimate penological interests in control of prison gangs, and belated notice of the materials' arrival and confiscation satisfied due process in this case.

## C. Confiscation of Legal Mail.

"[I]nmates retain at least some constitutional rights despite incarceration," but those rights must be balanced against state interests in maintaining prison safety and security. *Washington v. Harper*, 494 U.S. 210, 223 (1990). Whatever constitutionally protected right Allah had against having prison officials read or confiscate his incoming mail from counsel or otherwise related to his civil lawsuit, that right must be balanced against the prison's legitimate interests in preventing

---

[6] If Allah were challenging a practice or policy of opening and inspecting inmates' incoming mail from attorneys outside the inmate client's presence, my analysis of his claim would be more in-depth. *See Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (holding that "[a] state pattern and practice, or . . . explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech"). Because Allah does not allege more than one instance of his mail from counsel being opened or inspected outside his presence, however, I find no need for a discussion of the constitutional requirements for prison legal mail policies.

gang-related materials from entering the prison environment. "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" *Id.* at 223.

To determine whether the prison officials' reading or confiscation of Allah's lawsuit materials withstands scrutiny under this reasonableness standard, I must consider these three factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, a court must consider the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Third, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Id.* at 224-25 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).[7] Under these factors and my decisions in Allah's prior case, I find it evident that the defendants' searches and confiscations of Allah's incoming legal materials in November 2013 and December 2014 were reasonably related to legitimate prison interests in safety and security.

---

[7] The *Turner* decision also discussed another factor: "[W]hether there are alternative means of exercising the right that remain open to prison inmates." 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id.* Allah has no other means to possess his NGE written materials. Under the other *Turner* factors, however, I conclude that Allah's constitutionally protected interests in his NGE materials are outweighed by legitimate prison interests in security, whether or not Allah retains some other means to exercise the rights he asserts.

First, in April 2014, I determined that prison officials had compelling security reasons to prohibit inmates from possessing NGE materials in their cells and could lawfully do so. My factual findings included the following:

> NGE has acted as a prison gang that would pose a threat to the safety and security of VDOC prison facilities if treated as other religious groups. Inmates affiliated with NGE have a demonstrated history of violence and racism.
>
> . . . .
>
> NGE materials are often handwritten, and can vary from copy to copy. Whether handwritten or typed, most contain racist and/or violent sentiments. Additionally, most contain codes that have the potential to aid inmates in passing messages that circumvent safety and security in the prison.

*Allah*, 2014 WL 1669331, at *2. After extensive discussion of Allah's claims and the evidence presented at the bench trial, I made the following conclusions of law regarding possession of NGE materials:

> Due to the inability of VDOC to review all handwritten NGE materials, and the frequency with which typed and handwritten NGE materials contain codes, racist sentiments, and/or violent sentiments, the decision of VDOC to ban such NGE materials is the least restrictive means of furthering a compelling state interest in prison safety.

*Id.* at *11. I denied relief under § 1983 and granted judgment for the defendants, and the Fourth Circuit affirmed my decision. *Allah*, 601 F. App'x at 205 ("[W]e discern no reversible error. We are therefore content to affirm the judgment on the . . . Opinion of the district court.").

Second, under the constitutional standard in *Turner*, I also conclude that based on my factual findings and legal rulings in Allah's previous case, the search and seizure of Allah's incoming legal mail related to that lawsuit and containing NGE materials were lawful. Allah brought the claims in his prior lawsuit under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"), rather than under the First Amendment. To defeat a RLUIPA challenge to a particular prison policy, VDOC must "prove its policy furthers a compelling governmental interest by the least restrictive means." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). Thus, RLUIPA requires a higher degree of proof from prison officials on the effects of accommodating an inmate's religious practices than does the First Amendment. *See, e.g., Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006) ("RLUIPA adopts a more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness."). As a result, when a prison policy withstands scrutiny under the RLUIPA standard, as I have found that the VDOC's prohibition on possession of NGE materials does, that policy also survives a constitutional challenge under *Turner* without further discussion. *See, e.g., Utt v. Brown*, No. 5:12-CT-3132-FL, 2015 WL 5714885, at *9 (E.D.N.C. Sept. 29, 2015) (finding that policy held to withstand RLUIPA's strict scrutiny was also "reasonably related to legitimate penological interests" so as to withstand constitutional challenge).

Based on the foregoing, Allah has no actionable claim that prison officials' searching, reading, or confiscating of his incoming legal mail items violated his constitutionally protected rights. My prior ruling upholding under RLUIPA the VDOC's policies prohibiting possession of NGE materials establishes that those policies are lawful under the Constitution and as applied to Allah's NGE materials. Thus, I conclude that those rulings rendered in Allah's prior lawsuit foreclose any free speech, search and seizure, access to courts, and substantive due process claims in this civil action. Indeed, to hold otherwise would be to allow Allah to make an end run around my prior ruling, as affirmed by the court of appeals, that prison officials may lawfully prohibit him from possessing his NGE materials and writings.

D. Procedural Due Process.

Allah's procedural due process claim related to the confiscation of his materials fails for a different reason: he has no federally protected property interest in possessing his NGE materials in a VDOC prison. An inmate's claim under § 1983 that state officials deprived him of his property without due process involves two questions: whether the inmate had a protected right to the property with which the state interfered and whether the procedures attendant to that deprivation were constitutionally adequate to prevent wrongful deprivations. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "Property interests . . .

are not created by the [federal] Constitution. Rather they are created and their dimensions are defined by existing rules . . . such as state law[s] . . . that support claims of entitlement" to the property. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Prison administrators have broad discretion in the management of correctional institutions." *Bannan v. Angelone*, 962 F. Supp. 71, 73 (W.D. Va. 1996). Thus, when other rights like free exercise, free speech, and substantive due process are not infringed, as in Allah's circumstances here, prison officials may "constitutionally disallow the possession of personal property" items without implicating inmates' federal due process rights. *Id.* at 74.

Allah cannot point to any entitlement or protected interest he has under state law or VDOC regulations to possess his NGE materials in prison. On the contrary, as discussed, VDOC policies prohibit inmates' possession of NGE materials. Therefore, Allah has no state-created, protected interest in possession of the confiscated materials and, consequently, had no federal right to procedural protections prior to their confiscation. Moreover, as officials did provide him with notice and an opportunity to challenge the search and confiscation, he has received the key elements of procedural protection in any event. *Mullane,* 339 U.S. at 313.

E. Access to Courts.

As discussed, Allah fails to state a cognizable claim that he has been denied access to the court because he fails to allege that the defendants' actions "hindered

his efforts to pursue a legal claim" concerning "conditions of confinement." *Lewis*, 518 U.S. at 351, 356. Moreover, if a prison regulation satisfies the reasonableness standard described in *Turner,* application of that regulation will survive constitutional scrutiny even if it results in actual injury to an inmate's litigation efforts. *Id.* at 362.

For these reasons, I cannot find any viable access to courts claim arising from Allah's alleged inability to seek copyright protection for his lawfully confiscated NGE manuscripts. As the Supreme Court has held, the right to access the court

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis omitted).

### F. Retaliation.

Finally, I will also summarily dismiss Allah's § 1983 retaliation claim for failure to state a claim. Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). However, to state a § 1983 claim here, Allah must present more than conclusory allegations of retaliation. *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.

1994). Specifically, he must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the allegedly retaliatory action. *See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Allah can make no such showing. In this case, it is clear from his own allegations that prison officials confiscated the materials at issue because they were NGE materials that could be lawfully withheld from Allah under the courts' rulings in his prior lawsuit. In short, prison officials clearly confiscated Allah's NGE materials not because he pursued the prior lawsuit, but because that prior lawsuit was decided against him. Such actions do not provide grounds for a § 1983 retaliation claim.

III.

For the reasons stated, I will summarily dismiss Allah's § 1983 claims in this lawsuit with prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim. I am satisfied that even "drawing all reasonable factual inferences from [the factual allegations in the Complaint] in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief" regarding the search and confiscation of his NGE materials. *Edwards v. City of* Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). In light of my ruling, I also

decline to exercise supplemental jurisdiction over Allah's state law claim in detinue, *see* 28 U.S.C. § 1367(c)(3), and will dismiss this claim without prejudice.

A separate Final Order will be entered herewith.

DATED: May 9, 2017

/s/ James P. Jones  
United States District Judge